UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

RONA ANN PUGH,                              )
                                           )
                Plaintiff,                 )
                                           )        No. 1:09-CV-112
v.                                         )
                                           )        *Collier / Lee*
MICHAEL J. ASTRUE,                         )
Commissioner of Social Security,           )
                                           )
                Defendant.                 )

## REPORT AND RECOMMENDATION

This action was brought by Plaintiff Rona Ann Pugh ("Plaintiff") pursuant to 42 U.S.C. §§

405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social

Security ("Commissioner" or "Defendant") denying Plaintiff social security disability ("SSD")

benefits. Plaintiff and Defendant have filed cross motions for summary judgment [Doc. 8, 12].

Plaintiff seeks the award of benefits, or in the alternative, a remand to the Commissioner to consider

new evidence.

For the reasons stated below, I **RECOMMEND** that: (1) Plaintiff's motion for summary

judgment [Doc. 8] be **DENIED**; (2) Defendant's motion for summary judgment [Doc. 12] be

**GRANTED**; (3) the decision of Commissioner be **AFFIRMED**; and (4) this action be **DISMISSED**

**WITH PREJUDICE**.

### I.      ADMINISTRATIVE PROCEEDINGS

Plaintiff filed her current application for SSD benefits on April 26, 2005, alleging disability

since January 14, 2004 (the day after the previous disability decision), from depression, anxiety,

asthma, emphysema, acid reflux, chronic obstructive pulmonary disease ("COPD"), and hepatitis

C (Tr. 89, 95).[1]  Her claim was initially disapproved on December 5, 2005, and again on reconsideration on April 26, 2005 (Tr. 66, 70, 75).  Plaintiff requested a hearing, which was held on December 18, 2007 (Tr. 1120).  At this hearing, the ALJ noted that Plaintiff had not presented much recent evidence since her previous determination of nondisability, and Plaintiff's attorney requested that the record be held open to submit additional treatment records, and that the ALJ order testing to evaluate Plaintiff's intellectual functioning (Tr. 1121, 1139).  Both requests were granted, and the ALJ also asked Plaintiff's attorney to attempt to procure a treating physician's assessment of Plaintiff's functional impairments, but no such assessment appears in the record (Tr. 1139-40).

Following the hearing, Plaintiff attended a consultative psychological evaluation in February, 2008, the results of which were considered invalid because of Plaintiff's lack of effort and malingering (Tr. 22).  The ALJ provided the results of that evaluation to Plaintiff's attorney, who responded on May 1, 2008, by requesting an additional 30 days to obtain a treating source statement (Tr. 23).  Even though several months had passed since the hearing, the requested time was granted (*id.*).  On June 11, 2008, Plaintiff's attorney submitted interrogatories to be forwarded to the consultative examiner and indicated in her correspondence that she would again request additional time (after the interrogatories were returned) for an evaluation by Dr. Walter Ring, a psychologist who had treated Plaintiff ten years earlier (Tr. 23, 167, 1097).  The ALJ denied the request, explaining that Plaintiff "was granted ample opportunity to respond timely and to submit additional

[1] Plaintiff filed her first claim for SSD benefits on December 13, 2000, alleging disability beginning on September 2, 2000 (Tr. 53).  That claim was denied on March 9, 2001.  She filed a second claim on April 17, 2002, alleging disability from depression, anxiety, asthma, emphysema, and acid reflux (Tr. 52-53).  Following disapproval of benefits both initially and on reconsideration, a hearing was held and an Administrative Law Judge ("ALJ") concluded on January 13, 2004, that Plaintiff was not disabled (Tr. 59).  Plaintiff subsequently filed another claim for benefits on June 9, 2004.  That claim was denied in an initial determination on October 13, 2004, but Plaintiff did not request reconsideration (Tr. 16).

information but she failed to do so." (Tr. 23). The ALJ, by decision dated June 25, 2008, determined

Plaintiff was not disabled (Tr. 29).

On July 23, 2008, Plaintiff was evaluated by Dr. Ring (Tr. 12). Arguing that the delay in

obtaining Dr. Ring's services was caused by Plaintiff's "extremely limited resources" (Tr. 1097),

on August 25, 2008, Plaintiff requested Appeals Council review of the ALJ's decision, including

Dr. Ring's "report" (Tr. 12). The Appeals Council considered a "letter" from Dr. Ring dated July

23, 2008, but concluded that Dr. Ring's opinions were not relevant to the time period covered by

the ALJ's decision (Tr. 7). Dr. Ring's letter/report was returned to Plainitff to use if she decided to

apply for a disability determination regarding a time period after June 25, 2008 (Tr. 7). On February

19, 2009, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the

final decision of the Commissioner (Tr. 6).

## II.     ELIGIBILITY FOR SSD BENEFITS

The Social Security Administration ("SSA") determines eligibility for disability benefits by

following a five-step process. 20 C.F.R. § 404.1520(a)(4)(i-v).

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment-i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities-the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647 (6th Cir. 2009). The claimant bears the burden of proof at the first four steps, but the burden shifts to the Commissioner at step five to show there are jobs the claimant can perform. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

## III.     FACTUAL BACKGROUND AND ALJ'S FINDINGS

Plaintiff was 40 years old at the time of the hearing (Tr. 27). She lived with her mother and stepfather (Tr. 120, 129), but she stated she had lived in a tent between July, 2006, and September, 2006 (Tr. 1055, 1059). She completed the tenth grade, and although her school performance was reportedly poor, Plaintiff did not attend special education classes (Tr. 99, 1126). She worked sporadically as a dishwasher and cashier, motel housekeeper, produce-cleaner, and sandwich maker (Tr. 95, 105, 1124). By Plaintiff's account, her longest period of employment was "[t]wo to three months." (Tr. 105, 1126). Plaintiff last worked in 2005 for about two months at a fast food restaurant, but "walked out" when she was asked to work the cash register because she "didn't know how to work on the cash register." (Tr. 1123, 1126-27). Plaintiff attributes her inability to keep a job to mood swings and a bipolar disorder. She testified, "if somebody gets on to me, I can't handle it. I just quit or I have to resign." (Tr. 1126). She stated that she has trouble getting along with anyone and withdraws from contact with others, including her mother and stepfather, in order to avoid conflict (Tr. 1134). At the hearing, Plaintiff testified that she does not shop, visit others, watch television, prepare her own meals, or drive (Tr. 1128). Two months later, however, she stated that she does watch television, goes shopping with her stepfather, plays with her dogs (Tr. 1088). In addition, she denied dating (Tr. 1088), but reported to her treating physicians that she has been involved in more than one dating relationship (Tr. 1047, 1069).

### A.     Plaintiff's Complaints and Treatment History

Although she alleges various physical impairments in her application for disability, Plaintiff

4

does not contend on appeal that she is disabled because of those physical impairments.[2]  Instead, Plaintiff challenges the ALJ's findings with respect to her non-exertional impairments.  For that reason, this review of the evidence will focus on Plaintiff's complaints and treatment relating to non-exertional limitations.

In her application for benefits, Plaintiff complained that she "worr[ies] all the time," which causes physical pain "all over [her] body" (Tr. 101, 103).  She claimed that her pain lasts "all day," "everyday" (*Id.*).  She also complained of depression and forgetfulness (Tr. 113, 116).  She stated she had considered suicide "several times" (Tr. 115), and reportedly attempted suicide by overdose on one occasion (Tr. 1075).  When describing her daily activities, Plaintiff stated she "do[es not] do much of anything." (Tr. 104).  She gets out of bed at noon and listens to the radio until bedtime.  She watches television "some," but loses interest before long, and mostly "sit[s] in [her] room" (Tr. 115-17).  Plaintiff stated she does not drive because she is too nervous (Tr. 115), and she leaves the house only twice per week, going shopping or visit others about once each month (Tr. 115, 117).  She stated she does not participate in any social activities (Tr. 117).

Plaintiff's has reportedly received mental health treatment since 1992 (Tr. 484), and the record contains treatment notes from Volunteer Behavioral Health Care System providers dating from April, 2000 (Tr. 475).  Her diagnoses include bi-polar disorder (Tr. 502), anxiety disorder (Tr. 460), borderline intellectual functioning (Tr. 454), and substance abuse disorder (Tr. 335).  Her symptoms of mood swings, anxiety, and depression have ranged from "mild" to "high" over the course of her treatment (*e.g.*, Tr. 431, 460), but the most recent treatment notes show "mild" mood instability (Tr. 1067).  Plaintiff's treatment for these complaints has always been influenced by her

---

[2]  In an exchange with the ALJ during the hearing, Plaintiff's attorney conceded that Plaintiff's physical maladies, "[a]t this point in time, . . . are not really disabling" (Tr. 1122).

5

history of drug and alcohol abuse, which reportedly began when Plaintiff was as young as four years old (Tr. 173, 339, 413, 448, 710, 779). At least one treating source indicates that Plaintiff's anxiety disorder was "induced" by her substance abuse (Tr. 1036, 1070). In addition, Plaintiff has engaged in drug-seeking behavior on a number of occasions (Tr. 425, 439, 1053, 1057, 1059), prompting physicians to be reluctant to prescribe medicines that might be abused (Tr. 174, 410, 1047, 1081).[3] Although Plaintiff testified at the hearing that she "got off from all the drugs" in 2000, she later admitted to smoking marijuana as recently as 2005 (Tr. 1124-25). The record also shows she tested positive for opiates and PCP in 2004, and in July of 2004 she stated it had been only "months" since she had last used cocaine (Tr. 425, 710, 1125).

### B.     Medical Opinions

The record contains very few treating source assessments of Plaintiff's functional limitations since January 13, 2004 (the date of the previous ALJ's determination). In April, 2004, the treatment notes state that Plaintiff "is unable to work at present," but it is unclear whether this is the opinion of the physician or a record of Plaintiff's self-assessment (Tr. 427). In February, 2005, Plaintiff was evaluated as having a "mild" limitation in activities of daily living due to her need for "occasional assistance with routine"; a "moderate" limitation in interpersonal functioning because of "irritability around others"; a "mild" limitation in concentration, task performance, and pace due to "occasional difficulty concentrating"; and a "moderate" limitation in adapting to change because of "increased

---

[3] For example, on one occasion, Plaintiff sought a Xanax prescription at the emergency room, alleging that she had been out of Xanax for two weeks and was experiencing chest pains due to stress, but she tested positive for BZO (of which Xanax is one type) and THC (Tr. 646, 653, 660). The emergency room physician did not give Plaintiff any prescriptions (Tr. 665). On another occasion, Plaintiff visited the emergency room "acting strange[ly]" and complaining of shoulder, back, and leg pain "unrelieved by Tylenol" (Tr. 732). The physician attempted to instruct Plaintiff on how to deal with muscle aches, but Plaintiff "w[ould] not listen" (Tr. 732, 735).

6

anxiety under stress" (Tr. 421-22). Since 2004, Plaintiff's treating sources have consistently rated her Global Assessment of Functioning ("GAF") score at 55, consistent with an overall "moderate" functional impairment, despite noting that Plaintiff's GAF had previously ranged from as low as 50 to as high as 64 (Tr. 404-14, 423, 1036-66).[4]

In September 2005, Benjamin Biller, M.S., a licensed psychological examiner, performed a consultative psychological examination under the supervision of James Milliron, Ph.D. (Tr. 483). Mr. Biller observed that Plaintiff's grooming was "barely adequate" and she was "groggy and slow to respond," but she was "polite and cooperative" and her behavior was "mostly appropriate and socially acceptable" (Tr. 483-84). Plaintiff reported paranoia and auditory hallucinations (Tr. 484). Based on his interview, Mr. Biller opined that Plaintiff exhibited "adequate effort" and was "not trying to appear less competent than she actually is." (Tr. 485-86). Mr. Biller concluded Plaintiff's intellectual functioning was in the borderline to low average range, and diagnosed severe bipolar disorder and panic disorder (*id.*). Mr. Biller assigned Plaintiff a GAF score of 55 (Tr. 487). He opined that Plaintiff's abilities to understand and remember both simple and detailed instructions, to concentrate and persist in work activities, and to adapt to changes in the work environment were minimally impaired, but her ability to interact with peers and supervisors in a work setting was moderately to severely impaired (Tr. 487).

In November, 2005, Bill Regan, M.D., a non-examining consultant, opined that although Plaintiff was "unable to relate to the public" or "perform detailed tasks," she was able to "adequately relate to supervisors and coworkers" and "perform[] simple tasks with limited exposure to the

---

[4] A GAF score between 41 and 50 corresponds to a "serious" psychological impairment; a score between 51 and 60 corresponds to a "moderate" impairment; and a score between 61 and 70 corresponds to a "mild" impairment. *Nowlen v. Comm'r of Soc. Sec.*, 277 F. Supp. 2d 718, 726 (E.D. Mich. 2003).

7

public." (Tr. 498). Dr. Regan diagnosed Plaintiff with an affective disorder (Tr. 502). With respect to the "B" criteria for affective disorders, Dr. Regan opined that Plaintiff was mildly limited in activities of daily living, moderately limited in social functioning, moderately limited in maintaining concentration, persistence, or pace, and had experienced one or two episodes of decompensation (Tr. 509). He opined that the evidence did not support the presence of any of the "C" criteria for affective disorders (Tr. 510).

In May, 2008, Plaintiff was referred for an "updated" psychological evaluation with David Caye, M.S. (Tr. 22, 1086). Mr. Caye observed that Plaintiff had appropriate attire and "stable" grooming (Tr. 1089). During the interview, Mr. Caye became suspicious of "symptom magnification," so he administered a malingering test in addition to a battery of intelligence and mental functioning tests (Tr. 1087). Although Plaintiff scored 62 on an IQ test, Mr. Caye opined that the results were invalid (Tr. 1092). He also concluded that her self-reported symptoms were not credible (Tr. 1093).

Apparently because of the conflict in the record between the evaluations of Messrs. Biller and Caye, Plaintiff's counsel arranged for an evaluation of Plaintiff by Dr. Ring (Tr. 1097). As noted above, Dr. Ring's report was not considered by the ALJ, it does not appear in the administrative record, and it does not appear in the Court's record.

**C.     ALJ's Findings**

At step one, the ALJ found that Plaintiff had not engaged in gainful activity since the date of her application (Tr. 18). At step two, the ALJ found that Plaintiff had several severe impairments, including mood disorder, anxiety, possible borderline intellectual functioning, and a history of substance abuse (Tr. 19). The ALJ concluded at step three, however, that none of Plaintiff's impairments was severe enough to meet any listing (Tr. 24). The ALJ then evaluated Plaintiff's

8

RFC and found she was able to perform unskilled light work which requires simple instructions, involves rare contact with the public and only limited contact with coworkers, and avoids pulmonary irritants (Tr. 24-27). The ALJ concluded Plaintiff's RFC precluded any of her past relevant work (Tr. 24-27), but at the fifth and final step, the ALJ relied on the testimony of a vocational expert ("VE") to conclude that there were jobs existing in significant numbers that Plaintiff could perform. Accordingly, the ALJ determined Plaintiff was not disabled (Tr. 28).

## IV. ANALYSIS

Plaintiff challenges both the ALJ's determination of nondisability and the decision not to consider Dr. Ring's report. Plaintiff contends the ALJ's findings were flawed on four grounds. She first challenges the ALJ's finding that she did not meet listing 12.04(C) ("chronic affective disorder"). She next challenges the ALJ's application of the "special technique" required for evaluation of mental impairments. Third, Plaintiff challenges the ALJ's finding at step five, arguing that the VE's testimony was insufficient to support the conclusion that there are significant numbers of jobs that she can perform. And fourth, Plaintiff argues the ALJ erred by not considering the opinion of Dr. Ring and she requests a remand for consideration of that opinion.

### A. Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from

9

its weight." *Id.* (internal quotes omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decisionmakers because it presupposes there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, 2009 WL 2579620, *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, 2009 WL 3153153, at *7 (W.D. Mich. Sep. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claim of error without further argument or authority may be considered waived). Nonetheless, the court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not consider any evidence which was not before the ALJ for purposes of substantial evidence review, but new and material evidence can justify a remand of the case to the Commissioner if there is "good cause" for failing to present it earlier. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001).

**B.     Listing 12.04(C)**

The ALJ acknowledged that Plaintiff had been diagnosed with a mood (affective) disorder

10

(Tr. 23), but he concluded that her impairment was not sufficiently severe to meet listing 12.04(C)

(Tr. 24), which provides:

> The required level of severity for [affective] disorders is met when . . . the requirements in C are satisfied.
> . . .
> C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:
>
> 1. Repeated episodes of decompensation, each of extended duration; or
>
> 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or
>
> 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04.

Plaintiff contends she is eligible for disability under either the first or second criterion of

paragraph C. "Episodes of decompensation" are defined as:

> exacerbations or temporary increases in symptoms or signs [of the disorder] accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace. [They] may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two) [or] inferred from medical records showing significant alteration in medication[] or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household) . . . .

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00. "Repeated" episodes of "extended duration" means

at least three episodes during one year, or an average of one per four-month period, each lasting for

at least two weeks. *Id.* Even assuming Plaintiff's loss of her job in 2005 and her time spent living

11

in a tent in 2006 qualify as episodes of decompensation, they do not satisfy this frequency requirement. *See Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 659-60 (6th Cir. 2009). Dr. Regan's assessment is in accord: he observed that the record supported the existence of "one or two" episodes of decompensation, but concluded this was insufficient to establish the presence of any of the "C" criteria (Tr. 509-10).

Plaintiff also contends she meets the second "C" criterion. She argues that her pattern of failures at working and living on her own show that she is only marginally adjusted and predict that an increase in mental demands would cause her to decompensate. Plaintiff's history does seem to indicate that whenever she attempts to work or live on her own, the attempts end in failure. In addition, Plaintiff testified that these work failures were caused by her bipolar condition. *See* 20 C.F.R. Pt.404, Subpt. P, App. 1 § 12.00(D); 20 C.F.R. § 416.912(b)(3) (a claimant's testimony about her previous efforts to work may substantiate her mental limitations). As Plaintiff points out, the ALJ did not address whether Plaintiff's work failures would be likely to recur, but he did address whether those failures were causally related to her mental impairment. The ALJ specifically rejected Plaintiff's testimony insofar as it relates to the degree of her difficulty in getting along with others. The ALJ found Plaintiff's testimony generally dubious because of her malingering and her conflicting statements about drug abuse, and more specifically, he found Plaintiff's allegations that she is unable to get along with others were not credible because she interacted appropriately with her treating and examining sources (Tr. 26).

In sum, Plaintiff's testimony is the only evidence in the record showing that her work failures are attributable to her bipolar condition, and the ALJ rejected that testimony. Plaintiff simply points to no medical opinion in the record predicting that her mood disorder would cause her to

12

decompensate with any increase in mental demands. To the contrary, the medical consultants who offered opinions concluded that Plaintiff can adapt to the workplace subject to certain limitations (Tr. 487, 498). I **FIND** the ALJ's conclusion that Plaintiff did not demonstrate that she met listing 12.04(C) was supported by substantial evidence.

### C.      "Special Technique" for Assessing Mental Impairments

When accounting for a claimant's mental impairments at steps two and three of the sequential evaluation, the ALJ must follow a "special technique" which requires specific written findings documenting the claimant's functional limitations in four areas: activities of daily living; social functioning; concentration, persistence, and pace; and episodes of decompensation.[5]   20 C.F.R. § 404.1520a(c)3), (e)(2). Where the ALJ fails to make these findings, the decision will be reversed unless the error is harmless. *Rabbers*, 582 F.3d at 657-58. An error is harmless if "concrete factual and medical evidence" is "apparent in the record" and shows that even if the ALJ had made the required findings, the claimant would not have been found disabled. *Rabbers*, 582 F.3d at 657-58. A reviewing court must "exercise caution" in this inquiry, because it may be difficult or impossible to determine whether an error is harmless when the record contains "conflicting or inconclusive evidence" not resolved by the ALJ or "evidence favorable to the

---

[5] The first three areas are rated on a five-point scale: none, mild, moderate, marked, or extreme. The fourth area is rated on a four-point scale: none, one or two, three, or four or more. If the claimant's rating is "none" for all areas, she will not be considered to have a "severe" impairment at step two. *Rabbers*, 582 F.3d at 653. Otherwise, the ALJ considers the restrictions at step three. *Id.* At step three, if a claimant provides medical documentation of the "A" criteria for bipolar syndrome, she will meet the listing for 12.04 if she has any two of the following: a "marked" limitation in one of the first three areas or "repeated episodes of decompensation, each of extended duration." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.04(B). Alternatively, she may meet the listing under 12.04(C), as described above. If the claimant has a severe impairment that does not meet a listing, the ALJ's findings in these areas are "translated" into an RFC assessment (Tr. 24). *See id.* § 404.1520a(d)(3).

claimant that the ALJ simply failed to acknowledge or consider." *Id.*

### 1. Episodes of Decompensation

Plaintiff argues the ALJ inadequately explained his conclusion that there is no indication Plaintiff experienced episodes of decompensation. She argues the ALJ should have "address[ed] or reconcile[d] the fact that Plaintiff has never been able to keep a job" and lived in a tent following a conflict with her landlord. According to Plaintiff, "[t]hese are not rational responses," but instead indicate a "severe psychological deficiency." Plaintiff is correct that the ALJ is required to make a finding with respect to the number of episodes of decompensation a claimant has experienced. 20 C.F.R. § 404.1520a(c)(4). Here, the ALJ found none. He concluded, based on Plaintiff's consistent GAF scores consistent with "moderate" impairment, that she had experienced no "signs of marked deterioration" (Tr. 24). Thus, I **FIND** the ALJ made the required finding. Moreover, even if the ALJ's opinion did not adequately explain why his conclusion differed from that of Dr. Regan, who opined that the record supported the existence of "one or two" episodes of decompensation, any error would be harmless because only a finding of "repeated episodes" of "extended duration" would have directed a finding of disability. *See Rabbers*, 582 F.3d at 660-61.

### 2. Concentration, Persistence, and Pace

Plaintiff also challenges the ALJ's finding that "the claimant's mental impairments cause a moderate difficulty in her ability to maintain concentration, persistence, and pace for complex and detailed tasks." (Tr. 23). She argues the ALJ provides "absolutely no explanation" of what evidence supports this conclusion. While the ALJ's opinion is indeed thin in this regard, after reviewing the record, I **CONCLUDE** the ALJ's failure to provide a more detailed explanation here, if error, is nonetheless harmless. There are several opinions in the record with respect to Plaintiff's limitations

14

in this area. In May, 2005, Plaintiff's treating source opined her limitations in concentration, task

performance, and pace were "mild" (Tr. 422). Mr. Biller, in 2005, opined that those limitations were

"minimal[]" (Tr. 487). And, Dr. Regan, two months later, opined that they were "moderate" (Tr.

509). Since the ALJ chose to credit the *most* restrictive of these assessments, his failure to explain

why he did not choose a *less* restrictive assessment could not have prejudiced Plaintiff.

### 3.    Daily Activities and Social Functioning

Plaintiff also challenges the ALJ's conclusions with respect to the other two functional areas:

daily activities and social functioning. For these areas, Plaintiff does not challenge the adequacy

of the ALJ's explanation, but rather the substance of his conclusions. First, Plaintiff challenges the

ALJ's conclusion that she is mildly limited in performing daily activities. She first points out that

she does not maintain her own residence. Although Plaintiff does not maintain her own home and

lives instead with her mother and stepfather, the ALJ was correct to inquire not what Plaintiff *has*

*done*, but what she *can do.* As the ALJ observed, Plaintiff's treating sources have found mild

limitations in daily activities (Tr. 421). A consulting physician, similarly, found Plaintiff was only

mildly limited in this area (Tr. 509). In light of the limited record of Plaintiff's difficulties with

daily activities, these medical opinions certainly constitute substantial evidence. To be sure,

Plaintiff testified that she does not perform *any* daily activities except sitting in her room and

listening to the radio (Tr. 1128). The ALJ, however, found this testimony incredible because it was

inconsistent with Plaintiff's other accounts of her daily activities (Tr. 26). Plaintiff also argues that

her impairment is manifested in her poor hygiene. While there are occasional references to

Plaintiff's "marginal hygiene" in the record (*e.g.*, Tr. 1065), many more references show that her

hygiene and grooming have been "fair" or "adequate" (Tr. 1035-53) and the most recent observation

15

showed that they were "stable" (Tr. 1089). On the whole, I **FIND** the ALJ's conclusion that Plaintiff is only mildly limited in activities of daily living is supported by substantial evidence.

Next, Plaintiff takes issue with the ALJ's finding that she is moderately limited in social interaction. Plaintiff cites her own report to a treating provider in March, 2006, that she "go[es] off on people without [her] nerve medicine" and the treating provider's notation that her affect was "irritable" (Tr. 1047). But the ALJ found Plaintiff's description of her own symptoms to be suspect in light of her drug-seeking behavior (Tr. 24). Indeed, the same treating provider refused to provide Plaintiff with the "nerve medicine" she was seeking during that visit because of her history of substance abuse (Tr. 1047). Plaintiff also argues the ALJ should have credited Mr. Biller's opinion that she was "moderately to severely limited" in this area. The ALJ specifically considered Mr. Biller's opinion, however, and concluded it was not consistent with the other record evidence because it was based largely on Plaintiff's subjective complaints, which the ALJ found incredible (Tr. 27). The ALJ also discounted Mr. Biller's conclusion on the basis that Plaintiff, during his examination, was able to demonstrate appropriate behavior and emotional reactions (*id.*). Furthermore, Plaintiff's treating sources, like the ALJ, have found only a "moderate" limitation in interpersonal functioning (Tr. 421). I **FIND** the ALJ's conclusion was supported by substantial evidence.

### D. Vocational Expert's Testimony

Plaintiff also argues that the hypothetical the ALJ posed to the VE did not adequately reflect Plaintiff's impairments. A VE's testimony can satisfy the Commissioner's burden to show that the claimant is capable of performing work that exists in significant numbers, but the VE's testimony must be based on an accurate description of the claimant's impairments. *Howard v. Comm'r of Soc.*

16

*Sec.*, 276 F.3d 235, 239 (6th Cir. 2002). Here, the VE testified, based on a hypothetical that mirrored the ALJ's assessment of Plaintiff's RFC, that Plaintiff could work as a produce cleaner, car wash attendant, or janitor, as well as "[a] lot more light, unskilled work" (Tr. 1136-37). If Plaintiff were moderately to severely limited with respect to interaction with peers and supervisors, however, as Mr. Biller opined, the VE testified she would not be able to maintain gainful employment because of attendance problems (Tr. 1137-38). Because I have found that the ALJ's conclusion (that Plaintiff was only moderately limited in social interaction) was supported by substantial evidence, I also **FIND** the ALJ's hypothetical accurately reflected Plaintiff's limitations, and I **CONCLUDE** the VE's testimony is sufficient to meet the Commissioner's burden to show that Plaintiff can perform jobs existing in significant numbers.

### E. Opinion of Dr. Ring

Plaintiff challenges the ALJ and the Appeals Council's decision not to consider the late-filed opinion of Dr. Ring. An ALJ's decision not to hold the record open for further evidence is reviewed for an abuse of discretion. *See Hayes v. Comm'r of Soc. Sec.*, No. 09-5409, 2009 WL 4906909, at *3 (6th Cir. Dec. 18, 2009) (unpublished) (*citing* 20 C.F.R. § 404.1517; *Landsaw v. Sec'y of Health & Human Serv's*, 803 F.2d 211, 214 (6th Cir. 1986)). Here, the ALJ noted at the hearing that there was a need for further evidence of mental impairments and ordered a consultative examination. The results of that examination were deemed invalid because of Plaintiff's malingering, so the ALJ granted Plaintiff an extension of time to secure another opinion. Plaintiff did not do so, and the ALJ issued his decision on June 25, 2008 (Tr. 29). Almost a month later, Plaintiff was evaluated by Dr. Ring. (Tr. 12). Plaintiff argued that the delay in obtaining Dr. Ring's services was caused by Plaintiff's "extremely limited resources" (Tr. 1097), but Dr. Ring's services might not have been

17

necessary had Plaintiff not malingered during the first post-hearing evaluation, which was conducted

at the expense of the SSA. Plaintiff cites no authority for the proposition that an ALJ's failure to

hold the record open under these circumstances is an abuse of discretion, and I **CONCLUDE** there

was no abuse of discretion here.

Nor was it error for the Appeals Council to decline to disturb the ALJ's decision. The

Appeals Council is obligated to review "new and material evidence" submitted after an ALJ's

decision, but only if it is relevant to the time period that was considered by the ALJ. 20 C.F.R. §

404.970(b). If a plaintiff meets her burden to show that these conditions were met, the reviewing

court may remand the case to the Appeals Council. *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir.

1993). Here, it is difficult to determine whether the report of Dr. Ring is "new and material

evidence" because it is not in the record. Still, whether or not Dr. Ring's opinion was "new and

material," the Appeals Council concluded that it was not relevant to the time period covered by the

ALJ's decision (Tr. 7). Plaintiff argues, based on Dr. Ring's treatment of Plaintiff some ten years

prior to the July, 2008, evaluation, that his opinion describes Plaintiff's "permanent condition."

During the intervening ten years, however, there is no indication Dr. Ring provided any treatment

to Plaintiff, and it is difficult to see how Dr. Ring's single evaluation could credibly determine

Plaintiff's permanent condition, especially when Plaintiff argues her condition fluctuates with

periods of marginal adjustment and decompensation. *See* 20 C.F.R. § 404.1527(d)(2) (weight of

medical opinion depends, among other things, on the frequency with which treatment has been

provided). I **CONCLUDE** Plaintiff has failed to meet her burden to show that she is entitled to a

remand. *See Cotton*, 2 F.3d at 695 (ultimate burden to show disability rests on claimant).

18

## V.    CONCLUSION

Having carefully reviewed the administrative record and the parties' pleadings, I

RECOMMEND:[6]

> (1)    Plaintiff's motion for summary judgment [Doc. 8] be **DENIED**.
>
> (2)    Defendant's motion for summary judgment [Doc. 12] be **GRANTED**.
>
> (3)    The Commissioner's decision denying benefits be **AFFIRMED** and this action be **DISMISSED WITH PREJUDICE**.

s/*Susan K. Lee*
SUSAN K. LEE
UNITED STATES MAGISTRATE JUDGE

---

[6] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).

19